**In re Caroline NILES, Debtor.**

**No. BR–04–06943–ECF–CGC.**

United States Bankruptcy Court, D. Arizona.

March 28, 2006.

David Allegrucci, Allegrucci Law Office, PLLC, Glendale, AZ, for Debtor.

Steven J. Brown, Steven D. Nemecek, Steve Brown & Associates, LLC, Phoenix, AZ, for trustee.

### UNDER ADVISEMENT DECISION RE: TRUSTEE'S MOTION FOR TURNOVER OF PROPERTY

CHARLES G. CASE II, Bankruptcy Judge.

On April 22, 2004, Debtor Caroline Niles filed for Chapter 13 relief. At the time of her filing, Debtor valued her Gilbert, Arizona home in her Schedules at $180,000

with a mortgage owing of $160,000. Debtor claimed a homestead exemption under Arizona Revised Statute section 33–1101(A). Her Plan was confirmed on November 19, 2004, with no objections. Funding for the Plan was to come solely from Debtor's future earnings. In August of 2005, Debtor sold her Gilbert home and netted $118,317.75, which exceeded the applicable homestead exemption by $18,317.75.

Unable to make her Chapter 13 plan payments, Debtor converted her case to Chapter 7 on November 10, 2005. No one disputes that on this date Debtor still held in her possession the $18,317.75 in sales proceeds.

A dispute has now arisen between Debtor and the Chapter 7 Trustee as to whom the $18,317.75 belongs. The issue arose initially by way of Debtor's motions to redeem and abandon involving her 1999 Mazda Miata and the Trustee's motion for turnover of property of the estate. With respect to the Debtor's motions to redeem and abandon, the Trustee objected to the motions to the limited extent that Debtor not be permitted to use the $18,317.75 from the sale of her home to accomplish the redemption. Otherwise, the Trustee did not object to either request for relief and those matters were for the most part resolved. The only issue currently before the Court, therefore, is whether the $18.317.75 is property of the estate.

A hearing was held on February 15, 2006, at which time the Court allowed the Trustee additional time to file his reply and Debtor time to submit proof of what remains in her possession from the proceeds of the sale. That having been done, the matter is now ripe for resolution.

The Trustee seeks possession of the funds pursuant to 11 U.S.C. section 348(f)(1)(A), which provides that

[e]xcept as provided in paragraph (2), when a case under chapter 13 ... is converted to a case under another chapter under this title—(A) property of the estate in the converted case shall consist of property of the estate, as of the date of filing of the petition, that remains in the possession of or is under the control of the debtor on the date of conversion.

According to the Trustee, under 11 U.S.C. section 541, property of the original Chapter 13 estate included Debtor's homestead, as well as any proceeds from its sale if it were sold. Therefore, once the case was converted, the new Chapter 7 estate included the entire nonexempt proceeds from its sale. The Trustee contends that it may have been a different case if the Plan had provided for the sale of the home in order to fund the Plan payments, as then those proceeds would not have revested in Debtor upon confirmation but would have belonged to the Trustee to make the Plan payments.

■ The Trustee's reliance on Section 348(f)(1)(A) does not answer the precise question presented here, however. At best, Section 348(f)(1)(A) tells us that if the home had not been sold at the time of the conversion, it would have become property of the Chapter 7 estate, having been property of the estate as of the filing of the original Chapter 13 petition. However, the question would have still remained as to whether the increase in value to an amount in excess of Debtor's homestead exemption since the filing of the original petition would have also become property of the estate. The proper analysis really centers on understanding Section 348(f)(1)(B), which states that "[v]aluations of property ... in the chapter 13 case shall apply in the converted case." The question then becomes what was the "valuation" of Debtor's property in her chapter 13 case.

At the time Debtor filed her chapter 13 petition, she valued her home in her Schedules at $180,000 with liens totaling $160,000. Neither the Trustee nor any other interested party objected to this valuation. The Plan was subsequently confirmed also without objection. Debtor contends, therefore, that Plan confirmation constituted an implicit valuation of the property for purposes of Section 348(f)(1)(B). The Trustee disagrees, arguing that "valuation" does not mean valuation at confirmation, as Section 348 speaks of valuation "*in* the chapter 13" and does not set a time for valuation. He then takes it a step further and argues that valuation in this case should be at the time of the sale because an actual sale is the most accurate, definitive valuation that exists. The Trustee rejects the notion that valuation occurs implicitly at plan confirmation, saying such a conclusion flies in the face of Ninth Circuit law that appreciation inures to the benefit of the estate and creates an incentive for debtors to undervalue their home, subsequently convert to a chapter 7, and then prohibit the trustee from selling the home. The Court disagrees.

▌ While the Ninth Circuit itself has not yet addressed this issue, other courts within the Ninth Circuit have cited with approval the general conclusion that confirmation of a plan constitutes an implicit valuation. *See In re Peter,* 309 B.R. 792 (Bankr.D.Or.2004) (citing *In re Kuhlman* and *In re Wegner* for the proposition that without plan confirmation there is no valuation preconversion to entitle the debtor to the postpetition, preconversion appreciation); *In re Kuhlman,* 254 B.R. 755, 758 (Bankr.N.D.Cal.2000) (agreeing with the court in *In re Page* that plan confirmation acts as an implicit valuation for purposes of Section 348(f)(1)(B), but holding that where there was no plan confirmation, there was no valuation and, therefore, the debtor was not entitled to postpetition, preconversion appreciation). This appears to be the majority holding across the country. *See In re Slack,* 290 B.R. 282 (Bankr. D.N.J.2003) (holding that confirmation was an implicit valuation for purposes of Section 348 upon conversion); *Warren v. Peterson,* 298 B.R. 322 (N.D.Ill.2003) (holding that order confirming chapter 13 plan was implicit valuation); *In re Page,* 250 B.R. 465 (Bankr.D.N.H.2000) (holding that inherent in confirming a chapter 13 plan is the court's finding that the creditors would receive more under the plan than in a chapter 7 liquidation and that to make such a finding, the court must determine the value of the property or rely on the value of the property as scheduled).[1]

1. The Court recognizes that some courts disagree with the concept of implicit valuation. However, the rationale for rejecting the concept is not compelling. In *In re Jackson,* 317 B.R. 511 (Bankr.N.D.Ill.2004), the court stated that often parties simply rely on the scheduled value of all the debtor's property and not simply one piece, and may neither have the opportunity nor the need to value one item in the bundle of assets belonging to the debtor. Further, determining the actual value of each piece of property is often not necessary in determining whether the proposed plan meets the best interests test of 11 U.S.C. section 1325(a)(4). In addition, allowing the debtor to reap the benefit of such appreciation, according to the *Jackson* court, would encourage debtors to file chapter 13, undervalue their property and then later seek conversion after confirmation. This Court disagrees. With respect to the latter contention, Section 348(f)(2) expressly contains a requirement that conversion be proposed in good faith and debtors must proceed throughout bankruptcy in good faith. Further, excusing the trustee or the creditors from insisting on a formal valuation proceeding if there are any potential questions as to valuation at the time of confirmation is a bit extreme. The law consistently places a burden on litigants to protect their rights and object if those rights are not being protected.

Further, the Trustee's argument that such a holding violates Ninth Circuit law holding that postpetition appreciation inures to the benefit of the estate ignores two critical facts: One, that those cases involved bankruptcies that were filed as chapter 7s in the first instance and did not implicate Section 348(f)(1)(B), *See Schwaber v. Reed (In re Reed)*, 940 F.2d 1317 (9th Cir.1991); *Hyman v. Plotkin (In re Hyman)*, 967 F.2d 1316 (9th Cir.1992); and, two, that the intervening plan confirmation fundamentally changes the "property of the estate" landscape. Here, the plan was confirmed and the property revested in Debtor at that time.

Therefore, the value of the estate's interest in the proceeds from Debtor's sale of the property does not include any of the nonexempt sales proceeds. This is consistent with the holdings in several cases addressing facts similar to those presented here. In *In re Slack*, 290 B.R. 282 (Bankr. D.N.J.2003), debtors filed for chapter 13 relief and subsequently confirmed a plan. Unable to fulfill their plan, debtors converted their case to chapter 7. A creditor objected to the trustee's proposed abandonment of the property, contending that the property was worth more than the amount at which it was originally scheduled and had value to the estate. The court, noting the split in authority over the consequences of conversion, held that any potential increase in value of the property was not property of the estate upon conversion and that the value for purposes of determining what was property of the estate was the value implicitly determined at the time of confirmation. The increase in value, therefore, accrued to the debtors.

Similarly, in *In re Wegner*, 243 B.R. 731 (Bankr.D.Neb.2000), the court expressly determined that the increase in value to debtor's home between the chapter 13 petition date and conversion to chapter 7,

due to appreciation and her repayment of a portion of the debt, was not property of the converted chapter 7 case.

This conclusion is further supported by the legislative history to Section 348:

[t]his amendment would clarify the Code to resolve a split in the case law about what property is in the bankruptcy estate when a debtor converts from chapter 13 to chapter 7. The problem arises because in chapter 13 (and chapter 12), any property acquired after the petition becomes property of the estate, at least until confirmation of the plan. Some courts have held that if the case is converted, all of this after-acquired property becomes part of the estate in the converted chapter case, even though the statutory provisions making it property of the estate does not apply to chapter 7. Other courts have held that the property of the estate in a converted case is the property the debtor had when the original chapter 13 petition was filed.

These latter courts have noted that to hold otherwise would create a serious disincentive to chapter 13 filings. For example, a debtor who had $10,000 equity in a home at the beginning of the case, in a State with a $10,000 homestead exemption, would have to be counseled concerning the risk that after he or she paid off a $10,000 second mortgage in the chapter 13 case, creating $10,000 in equity, there would be a risk that the home could be lost if the case were converted to chapter 7 (which can occur involuntarily). If all of the debtor's property at the time of conversion is property of the chapter 7 estate, the trustee would sell the home, to realize the $10,000 in equity for the unsecured creditors and the debtor would lose the home.

This amendment overrules the holding in cases such as *Matter of Lybrook*, 951

F.2d 136 (7th Cir.1991) and adopts the reasoning of *In re Bobroff,* 766 F.2d 797 (3d Cir.1985). However, it also gives the court discretion, in a case in which the debtor has abused the right to convert and converted in bad faith, to order that all property held at the time of conversion shall constitute property of the estate in the converted case.

H.R.Rep. No. 103–835 at 57 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3340, 3366.

While admittedly an increase in value to real property is not the same as after-acquired property as that term is traditionally defined under bankruptcy law, it is similar in nature and justifies the same result. Denying the debtor the increase in value upon conversion would similarly act as a disincentive to filing chapter 13 in the first instance.

For these reasons, the Court concludes that the funds in excess of the exemption amount received as a result of the postconfirmation, preconversion sale of Debtor's home are not subject to turnover to the Trustee. Counsel for Debtor is to lodge a form of order consistent with this decision for the Court's signature.

So ordered.